## Diamond Glass Company, Appellant, *v.* Ladwig.

*Contract—Manufactured article—Future delivery—Passing of title.*

The general rule is that a chattel ordered to be manufactured and to be delivered in the future continues the property of the manufacturer until completed and delivered or tendered.  This general rule gives way where the intention of the parties is that the title shall pass upon completion of the article and notice thereof to the vendee, or at an earlier period.   But the cases in which it has been held that the title passed during the progress of manufacture are recognized as exceptional, and such conclusion is sustainable only where it is in accordance with the actual intention of the parties.

It is a question of intent, arising on the interpretation of the entire contract in each case.  If taking all the stipulations together, it is clear that the parties intended that the property should vest in the purchaser during the progress of the work and before its completion, effect will be given to such intention and the property will be held to pass accordingly; but, on the other hand, it will not be deemed to have passed out of the builder unless such intent is clearly manifested, but the general rule of law will prevail.

In an action for goods sold and delivered it appeared that the de-

fendant gave an order to plaintiff by which the latter was to construct, deliver and "set up" show cases of a particular design, material and dimensions, and that the defendant was to pay for them a stipulated price when "set up." The plaintiff did not deliver to the defendant the show cases, but did ship by rail to the defendant several crates of parts which when "set up" would be show cases. A drayman without special order from the defendant, but with whom the defendant had a general contract to bring to his store any goods that he might find at the railroad station consigned to the defendant, ordered one of his drivers to haul these crates to the defendant's store, and when they arrived there, the defendant ordered them to be taken to the third story where unopened packages were kept. Within twenty-four hours a fire occurred which destroyed the crates as well as the store. *Held,* that the title to the show cases had not passed to the defendant at the time of the fire, and that the court committed no error in nonsuiting the plaintiff.

Argued Feb. 28, 1907.   Appeal, No. 22, Jan. T., 1907, by plaintiff, from order of C. P. Lackawanna Co., May T., 1905, No. 333, refusing to take off nonsuit in case of Diamond Glass Co. v. John H. Ladwig.   Before RICE, P. J., PORTER, HENDERSON, ORLADY, HEAD and BEAVER, JJ.   Affirmed.

Assumpsit for goods sold and delivered.   Before NEWCOMB, J.

The facts are stated in the opinion of the Superior Court.

The following amendment was refused:

That by mistake and inadvertence the following was omitted from the plaintiff's statement, to wit: "It was expressly agreed by and between the plaintiff and defendant at the time when the orders were signed by Ladwig, that the plaintiff was to take the goods from the freight station and put them in place, and that the defendant was not to take the same from said station or meddle with them in any way; but that in violation of said agreement, the said John H. Ladwig did on November 3, 1903, cause and allow the said goods ordered by him from the plaintiff to be removed from the freight station in the city of Scranton and placed in his store in violation of his contract with the plaintiff, and as a result of said breach of contract and of duty on his part, the goods were destroyed on said November 3, 1903, shortly after they had been placed in his said store. Plaintiff avers by reason of said breach of contract the defend-

ant waived and prevented the plaintiff from taking said show cases from the station and setting them up, and that the said goods were worth $375, and that by reason of the acts of the defendant, it has lost the same. Plaintiff avers that by reason of the premises it is entitled to recover the sum of $375 with interest thereon."

*Error assigned* was in refusing to take off nonsuit.

*A. A. Vosburg,* with him *Charles W. Dawson,* for appellant. —The stipulation in the order that the show cases should be set up, was not a condition precedent to the vesting of the title to the goods : Emery v. Scarlett, 8 Pa. C. C. Rep. 123 ; Andrews v. Weaver, 4 Montg. 110 ; Hinde v. Whitehouse, 7 East, 558 ; Lingham v. Eggleston, 27 Mich. 324; Whitecomb v. Whitney, 24 Mich. 486 ; Terry v. Wheeler, 25 N. Y. 520 ; Elgee Cotton Cases, 89 U. S. 180 ; Dennis v. Alexander, 3 Pa. 50 ; Scott v. Wells, 6 W. & S. 357 ; Pepper v. Phila., 114 Pa. 96.

Even if the setting up of the show cases was a condition precedent, Ladwig by his acts waived compliance with this condition : James v. Burchell, 82 N. Y. 108 ; Smith v. Snyder, 168 Pa. 541; Jones v. Sowers, 204 Pa. 329; Newcomb v. Brackett, 16 Mass. 161; Crabtree v. Messersmith, 19 Iowa, 179 ; Grove v. Donaldson, 15 Pa. 128.

If a purchaser receives delivery before it is convenient for the seller to do what is necessary to complete the contract of sale, understanding that it is to be done afterward, the property vests in the buyer: Wilkinson v. Holiday, 33 Mich. 386 ; Pacific Iron Works v. R. R. Co., 62 N. Y. 272 ; Morse v. Sherman, 106 Mass. 430 ; Fuller v. Bean, 34 N. H. 290 ; Terry v. Wheeler, 25 N. Y. 520 ; Whelan v. Clock Co., 97 N. Y. 293 ; Butterfield v. Byron, 153 Mass. 517 (27 N. E. Repr. 667).

*W. S. Diehl,* of *Watson, Diehl & Kemmerer,* for appellee.— A contract to sell and deliver goods at a certain place gives no cause of action unless there be a delivery at the place agreed on : Millard v. Morse, 32 Pa. 506 ; Miller v. Seaman, 176 Pa. 291.

The rule is that the party in whom the title to property is

vested must bear the loss in case of destruction by accident: Pittsburg Glass Co. v. Doubleday, 2 Pa. Superior Ct. 170; McConihe v: New York, etc., R. R. Co., 20 N. Y. 495.

OPINION BY RICE, P. J., May 13, 1907 :

The plaintiff declared in assumpsit that on September 17, 1903, the defendant gave the plaintiff two written orders for show cases; that the plaintiff accepted the orders; that the show cases were delivered to and received by the defendant, and that he refused to pay the price agreed upon.   Upon the second trial of the case, and after the motion for compulsory nonsuit had been made, the plaintiff presented the petition for amendment of its statement of claim which is set forth in the first assignment of error.   The petition does not show how the " mistake or inadvertence " occurred which resulted in the omission of the averment proposed to be inserted in the statement.   But further, the proposed amendment is not in matter of form but in a matter of substance.   It would not be difficult to show that it averred a substantially different cause of action from that set up in the original statement of claim. The amendment was not such as the plaintiff was entitled to under the statute as matter of right, and, under the circumstances, we are not prepared to hold that there was an abuse of discretion in not permitting it.

The facts are that the plaintiff did not deliver to the defendant four show cases, but did ship by rail consigned to the defendant several crates of parts, which when " set up " would be show cases, and that within twenty-four hours after these crates of parts were placed in defendant's store, they were consumed by a fire which destroyed the store as well.   The plaintiff's shipping clerk testified upon the subject of shipment as follows : " On October 22, we shipped one crate of frames, roofs and bases, two crates of bases and one box of hardware, and on October 23rd four cases of plate glass, two boxes of glass, one crate of marble ; the two shipments being all of the goods which are necessary for two outside cases and two special cases, and comprise the order given by John H. Ladwig of Scranton, Pennsylvania, to the Diamond Glass Company on the 17th day of September, 1903."   Manifestly, the delivery of these parts out of which the show cases could be constructed

was neither complete nor substantial performance of the written contract, by the terms of which the plaintiff was to construct, deliver and "set up" show cases of the design, material and dimensions described in the orders, and the defendant was to pay for them the stipulated price when "set up." The contract formed by each order and acceptance was entire and executory, and the general rule is that a chattel ordered to be manufactured and to be delivered in the future continues the property of the manufacturer until completed and delivered or tendered. This general rule gives way where the intention of the parties is that the title shall pass upon completion of the article and notice thereof to the vendee, as in Ballentine v. Robinson, 46 Pa. 177, or at an earlier period. But the cases in which it has been held that the title passed during the progress of manufacture are recognized as exceptional, and such conclusion is sustainable only where it is in accordance with the actual intention of the parties. "It is a question of intent, arising on the interpretation of the entire contract in each case. If, taking all the stipulations together, it is clear that the parties intended that the property should vest in the purchaser during the progress of the work and before its completion, effect will be given to such intention and the property will be held to pass accordingly; but on the other hand, it will not be deemed to have passed out of the builder unless such intent is clearly manifested, but the general rule of law will prevail:" Per BIGELOW, C. J., in Briggs v. A Light Boat, 89 Mass. 287. No such intent is manifested in the stipulations and terms of the contract under consideration. It cannot be argued with any show of reason that the property became vested in the defendant, and a right of action for the stipulated price accrued to the plaintiff, upon completion of the parts out of which the show cases were to be constructed, or upon delivery thereof to the common carrier consigned to the defendant, or upon their arrival at the railroad station to which they were shipped.

But, it is contended, notwithstanding the express stipulation of the written order that "there is no condition or understanding relative to the above order that is not specified therein," that the court erred in rejecting the defendant's offers to show, first, that the trade meaning of the words "to

set up," when used in such a transaction, includes taking of the parts from the railroad station and setting them up in the place of business for which they are intended; second, that the understanding of the parties as to the meaning of the stipulation, as orally expressed at the time the orders were given, was in accordance with the trade meaning of the words. It is not perceived that proof of these facts would have strengthened the plaintiff's claim to recover the stipulated price for the show cases upon its mere delivery of the parts and materials out of which they were to be constructed upon the defendant's premises. But it is ingeniously argued that, even if the "setting up" of these materials and parts was a condition precedent, the defendant by his acts waived performance. The facts from which it is claimed waiver is to be implied are, that a drayman, without special order from the defendant, but with whom the defendant had a general contract to bring to his store any goods that he might find at the railroad stations consigned to the defendant, ordered one of his drivers to haul these crates to the defendant's store, and that when they arrived there the defendant ordered them to be taken to the third story where unopened packages were kept. The question of waiver is largely one of intention, each case depending upon its own special facts. If in this case the plaintiff had tendered these crates of materials and parts in full performance of its contract and the defendant had unqualifiedly accepted them with knowledge of the scope of the tender, it might well be argued that the property vested and thereafter they were held at the defendant's risk. But it is not contended that they were consigned to the defendant for any other purpose than that they should be placed in the defendant's premises, where the performance contemplated by the contract was to be completed. The plaintiff's consignment of the packages in the name of the defendant instead of its own name is rather to be interpreted as an invitation to the defendant to remove them to his premises for that purpose, than as a tender of full performance; and the acceptance of delivery of the packages, under the circumstances stated, is rather to be interpreted as a compliance with this implied request of the plaintiff, than as "a voluntary and intentional relinquishment of a known right," which is of the essence of waiver. To say that the defendant

waived or interfered with performance of the condition precedent would be unwarranted; it is more appropriate to say that his acts were in aid of such performance; hence, they do not preclude him from refusing payment because the condition precedent to the vesting of the property in him, and the accruing of a right of action for the price to the plaintiff, had not been performed. It should be noted, perhaps, that the destruction of these crates of parts is not claimed to have been in consequence of any negligent act of the defendant. The fire which destroyed his store was the proximate cause of their destruction, not the act of the defendant in accepting possession of them under the circumstances stated. The court was clearly right in sustaining defendant's motion for a compulsory nonsuit, and the result would not have been different if the offers of evidence we have been discussing had been received.

The judgment is affirmed.